UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE NORVELL,<br><br>       Plaintiff,<br><br>       v.<br><br>OFFICE OF PERSONNEL<br>MANAGEMENT, *et al.*,<br><br>       Defendants. | Case No. 1:14-cv-00421-BLW<br><br>MEMORANDUM DECISION AND<br>ORDER |

## INTRODUCTION

Pending before the Court are numerous motions to dismiss for lack of standing

and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). *See* Dkts. 101, 103, 104, 106, 107, 108, 110.[1] All motions are fully briefed and

---

[1] Docket 107 was incorrectly filed as a motion when it should have been combined with Docket 108, which is the Federal Defendants' motion to dismiss. The substance of Docket 107 is the (Continued)

at issue and the Court finds that oral argument is not necessary to resolve the pending motions. As discussed below, the Court will grant defendants' respective motions to dismiss on the grounds that Plaintiff lacks standing.

## BACKGROUND

Plaintiff Bruce Norvell brings the present action against the "Blue Cross Defendants,"[2] the "Federal Defendants,"[3] and "Other Carriers."[4] *Id.*  Since 2001, Norvell was covered by a Service Benefit Plan administered by BCI and BCBSA. *See Am. Compl.* ¶¶ 1-14, Dkt. 100. A Service Benefit Plan is a nationwide health benefits plan created pursuant to the Federal Employee Health Benefits Act ("FEHBA"). FEHBA authorizes the OPM to enter into contracts with private entities (known as "carriers") to offer insurance plans to federal employees, retirees, and their dependents. *Id.* In this case,

---

memorandum and supporting exhibits filed in support of the motion to dismiss at Docket 108. Thus, there are six, not seven, true pending motions to dismiss.

[2] This definition includes Blue Cross of Idaho Health Service Inc. ("BCI"), and Blue Cross and Blue Shield Association ("BCBSA").

[3] The Federal Defendants include the Office of Personnel Management ("OPM") and the Inspector General of the Office of Personnel Management ("IG").

[4] "Other Carriers" include the following defendants: Government Employees Health Association, Inc. ("GEHA"), National Association of Letter Carriers ("NALC"), Aetna Health Management, LLC ("Aetna"), Special Agent Mutual Benefit Association ("SAMBA"), and American Postal Workers Union Health Plan ("APWU").

the Service Benefit Plan ("Plan") at issue was created via a contract between OPM and BCBSA, which in turn acted on behalf of BCI to administer the Plan. Dkt. 106-1.

Norvell's current claims stem from a surgery he underwent in 2013 and the resulting cost share that he was initially charged. Specifically, Norvell underwent heart ablation surgery in 2013, a procedure covered by his Plan. *Am. Compl.* ¶ 28, Dkt. 100. Initially, Norvell's cost share was $3,917 for the surgery. *Id*. Norvell opted to engage in the mandatory administrative appeal process that OPM established pursuant to FEHBA, and was ultimately successful in having his cost share reduced to $100. Norvell asserts that this reduction was a result of the OPM re-categorizing his procedure as "inpatient."[5] Norvell does not allege that the $100 he ultimately paid was in error. Despite this outcome, Norvell filed the instant lawsuit with the primary goal of requiring all FEHBA plans to explicitly define the terms "inpatient" and "outpatient."

Norvell filed his original complaint on September 29, 2014, and his first amended complaint on November 17, 2014. Dkts. 1, 5. In an order dated February 17, 2015, Chief Magistrate Judge Candy Dale ordered Norvell to file a second amended complaint, which is the operative complaint in this matter. Dkt. 97. The case was thereafter reassigned to

---

[5] The Federal Defendants argue that contrary to Norvell's assertion, the OPM never reclassified his procedure as "inpatient"; rather, Norvell's cost share was reduced because he had been improperly charged for drugs used in his surgery. The Federal Defendants maintain that not only did Norvell not suffer any injury as a result of the "outpatient" classification, but that Norvell actually paid less than he would have had his procedure been classified as "inpatient." Dkt. 107, p. 12.

this Court and the second amended complaint ("Complaint") was filed on March 2, 2015. *See* Dkt. 100.[6]

The crux of Norvell's Complaint is that FEHBA plans' lack of definitions for the terms "inpatient" and "outpatient" violates two separate laws: (1) a FEHBA provision that requires FEHBA contracts to contain "a detailed statement of benefits" that includes "definitions of benefits as [OPM] considers necessary or desirable" (*see* 5 U.S.C. § 8902(d)); and (2) Public Health Service Act ("PHSA") § 2715, which requires the use of certain uniform definitions in summary documents describing health plans (*see* 42 U.S.C. § 300gg-15).

In their respective motions to dismiss, each defendant alleges that Norvell lacks standing to assert these claims.[7]

## LEGAL STANDARD

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Article

---

[6] There is an outstanding "motion to amend previously amended complaint" filed by Norvell on March 2, 2015, which seeks to amend the Amended Complaint found at Docket Number 5. Since Norvell was already given leave to amend his Amended Complaint by Chief Magistrate Judge Dale's February 17, 2015 order, this subsequent motion appears to be superfluous. Regardless, given the Court's ruling in this Order, Norvell's motion to amend (Dkt. 99) is moot.

[7] Defendants make additional arguments as well, but because the Court finds that standing is lacking, those additional arguments need not—and indeed, cannot—be considered. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (declining to endorse the "doctrine of hypothetical jurisdiction" which assumes jurisdiction for the purpose of deciding the merits).

III standing pertains to a federal court's subject matter jurisdiction, and lack of standing is properly raised in a motion to dismiss under Fed. R. Civ. P. (12)(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where a FRCP 12(b) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations, and further must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (noting difference between standards to maintain standing under FRCP 12(b) motion and summary judgment motion).

To determine whether a dispute presents a case or controversy sufficient for jurisdiction under Article III of the Constitution, courts apply a three-element test: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted)). The plaintiff bears the burden of establishing these three elements. *Lujan*, 504 U.S. at 560. In considering whether plaintiffs have satisfied their burden, the Court must evaluate their standing based on the facts "as they exist[ed] at the

time the complaint was filed." *Jacobs v. Clark County School Dist.*, 526 F.3d 419, 425 (9th Cir. 2008).

## ANALYSIS

Looking carefully to the Complaint, Norvell alleges the following injuries:

1. He was overcharged thousands of dollars due to the incorrect classification of his heart ablation surgery as "outpatient" care. *Compl.* ¶ 28, Dkt. 100.

2. He spent hundreds of hours wading through two appeals processes to get the cost share amount reduced. *Id.*

3. He is unable to compare various policies because their statements of benefits contain ambiguous definitions. *Id.* at ¶ 35.

4. Some of his grandchildren whom he financially assists intend to relocate to Idaho, and he might be burdened by having to assist them with health insurance. *Id.* at ¶ 66.

5. He suffers a "distinct continuing injury," (*Id.*, ¶ 38), because he remains "vulnerable" to a similar future situation. *Id.* at ¶ 29. [8]

The Court concludes that Norvell has failed to allege any discernible injury-in-fact resulting from the mischaracterization of his 2013 claim as outpatient care. Norvell's

---

[8] It bears mentioning that none of these alleged injuries could be "fairly traceable" to any of the Other Carriers. It is undisputed that Norvell never subscribed to any FEHB plan offered by any of the Other Carriers, nor does he allege that he will become covered by one of their plans in the near future. *Compl.*, Dkt. 100, ¶ 57-2.

assertion that he was injured when he was overcharged thousands of dollars due to the incorrect classification of his heart ablation surgery ignores the fact that he was ultimately successful in getting his cost share obligation reduced to $100. The injury of being overcharged has already been redressed by Norvell's own efforts in the administrative appeals process. Nowhere in Norvell's Complaint does he allege that the $100 cost share was inappropriate or unwarranted.

Second, spending hundreds of hours wading through the administrative appeals process is not a judicially cognizable injury sufficient to confer standing. *See, e.g.*, *Walker v. City of Lakewood*, 272 F.3d 1114, 1124, n.3 (9th Cir. 2001) ("Because we agree that a plaintiff cannot establish standing simply by filing its own lawsuit, we will not consider the time and money the FHF has expended in prosecuting this suit in deciding if the FHF has standing to pursue the retaliation claim"); *Fair Housing Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir.1998) ("[T]he pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III.").

Third, the inability to compare various plans does not constitute an injury in fact. This so-called injury is neither concrete nor particularized. If Norvell was indeed harmed by not being able to compare plans, he does not point to any specific damage or loss due to such confusion. Again, Norvell ultimately paid only a $100 cost share which he agrees was appropriate. He does not allege that had he been able to compare plans, he would have chosen one that would have resulted in a cost share lower than that.

Fourth, the alleged harm that Norvell may experience in having to assist his grandchildren financially if and when they relocate to Idaho and need a health insurance plan cannot constitute an injury in fact. This alleged harm presents a scenario that is purely hypothetical and not at all imminent. As such, it cannot be the basis for Article III standing.

Fifth and finally, Norvell's contention that he suffers a continuing injury because he remains vulnerable to a similar situation occurring in the future does not satisfy the injury in fact requirement. This epitomizes the type of conjectural harm for which standing is always denied. *Bova v. City of Medford*, 564 F.3d 1093, 1097–98 (9th Cir. 2009) ((finding that plaintiff's allegations that his insurance coverage could be denied upon retirement, an event that had not yet occurred, was too conjectural to survive a standing/ripeness inquiry). This future harm is contingent upon four events: (1) Norvell remains covered under a health plan that does not define "outpatient" or "inpatient"; (2) Norvell has a procedure done, covered by his plan but mischaracterized as "outpatient"; (3) as a result of the mischaracterization, Norvell is charged more; and (4) Norvell engages in the mandatory appeals process and, unlike here, is unsuccessful in getting his cost share reduced. It is quite possible that none of these events will occur, let alone all of them. "Unless and until contingent events occur," Norvell will not "have suffered an injury that is concrete and particularized enough to survive the standing . . . inquiry." *Bova*, 564 F.3d at 1097.

Not only has Norvell failed to assert any injury in fact, but he has also failed to establish the redressability prong of Article III. Redressability refers to "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103. Thus, the relevant inquiry is whether a plaintiff "personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

Norvell seeks numerous and far-reaching remedies within his Complaint. Namely, he requests that the Court: (1) order the Blue Cross Defendants and the Other Carriers to define "inpatient" and "outpatient" in their plans and to mail notices to FEHB enrollees advising them their plans should have included those definitions; (2) order that the Blue Cross Defendants be required to mail the same notices to non-FEHB enrollees but who are Idaho subscribers of plans administered by Blue Cross; (3) enter a declaratory judgment that the OPM has violated federal law by approving plans that do not provide a detailed statement of benefits and do not include a uniform glossary; (4) enter a declaratory judgment that the Blue Cross Defendants and the Other Carriers violated federal law by failing to provide "a detailed statement of benefits" or uniform glossary within their plans; (5) order the IG of the OPM to report to Congress that the OPM violated federal law; (6) issue an order enjoining all defendants from approving, issuing, or administering plans that do not comply with federal law; (7) grant the Plaintiff injunctive relief as requested, which might be necessary to protect federal employees; (8) impose a $1,000 fine against each defendant, other than APWUH and NALC; (9) assess

reasonable fees associated with this litigation to Plaintiff; and, finally (10) order any additional relief the Court deems just and proper. *Compl.*, pp. 31–33, Dkt. 100.

A common theme throughout Norvell's requests is that he seeks not remediation of his own injuries—which admittedly would be difficult since he has failed to allege any—but either "vindication of the rule of law" or protection for others who are enrolled in health benefit service plans. *See Steel Co.*, 523 U.S. at 107. But as the United States Supreme Court has put it:

> By the mere bringing of his suit, *every* plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.

*Id.*

Specifically, items 1–7 listed above are injunctive in nature—the proposed relief cannot remedy any past wrong but is aimed at deterring defendants from violating federal law in the future. But as discussed above, any future harm is hypothetical in nature, and as such, none of these proposed remedies redress any imminent harm. In short, nothing supports the requested relief except Norvell's generalized interest in deterrence, which is insufficient for Article III purposes. *Id.* at 108–09.

This leaves items 8–10 listed above. None satisfy the redressability requirement. With respect to the request that defendants be fined, such fines are payable to the United States Treasury—not the plaintiff—and are therefore insufficient to establish redressability. *Id.* at 106. Similarly, Norvell's request for attorney fees and costs does not

**MEMORANDUM DECISION AND ORDER - 10**

suffice because "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." *Id*. Likewise, an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp*., 494 U.S. 472, 480 (1990) (citations omitted).

Having found that Norvell has failed to establish that he has suffered an injury in fact fairly traceable to the defendants' conduct, which could be redressed by judicial intervention, the Court concludes that Norvell lacks standing. As such, this Court lacks jurisdiction to entertain Norvell's Complaint.

## ORDER

**IT IS ORDERED**

1. Defendants' motions to dismiss (Dkt. 101, 103, 104, 106, 107, 108, 110) are **GRANTED**. The Court will issue a separate judgment in accordance with Federal Rule of Civil Procedure 58.

2. Plaintiff's Motion to Amend Previously Amended Complaint (Dkt. 99) is deemed **MOOT**.

3. Plaintiff's Motion for Parties to be Excused from Serving Physical Copies of Documents (Dkt. 112) filed by Plaintiff is deemed **MOOT**.

4. Plaintiff's Motion for Three Separate Trials (Dkt. 119) is deemed **MOOT**.



DATED: September 23, 2015

B. Lynn Winmill
Chief Judge
United States District Court